IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LAURA DOMBROWSKI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | No. 22-1801 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| ——————————————————— | ) | |
| | ) | |
| LAURA DOMBROWSKI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | No. 22-1988 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| ——————————————————— | ) | |

**APPELLEE'S RESPONSE TO APPELLANT'S MOTION TO
DISMISS APPEAL**

Appellant, Laura Dombrowski, has filed two separate appeals

from the same District Court proceeding, docketed in this Court as Case

Nos. 22-1801 & 22-1988.  On November 29, 2022, Dombrowski filed

identical motions asking this Court to dismiss those appeals for lack of

appellate jurisdiction, and also to "specify that the District Court's

1

Orders are both unappealable and unenforceable." (Mot. at 26.)  An

appellant can, of course, move to voluntarily dismiss her own appeal,

Fed. R. App. P. 42(b)(2), and the United States does not object to

dismissal of Dombrowski's appeals per se.  We do, however, oppose

Dombrowski's motion to the extent that it asks this Court to "specify"

that the orders appealed from are "unappealable and unenforceable,"

a specification that would be tantamount to a decision on the merits of

her appeal.  As explained below, the District Court's order of sale is a

final, appealable order, and dismissal of this appeal would have no

effect on the finality or enforceability of the District Court's judgment,

order of sale, or order appointing a receiver.

## STATEMENT

This suit began as an action by Dombrowski against the United

States pursuant to 28 U.S.C. § 2410(a)(1) to quiet title to a parcel of real

property legally titled in her name and located at 54213 Stillwater

Drive in Macomb, Michigan (the "Stillwater Property").  (*See* Doc. 1.)

She brought this action because the Internal Revenue Service had

previously recorded a Notice of Federal Tax Lien in the Macomb County

Register of Deeds asserting liens against property held in the name of

2

"Laura Dombrowski as a nominee of Ronald Matheson," including, in particular the Stillwater Property. (*Id.* at 2; *see also* Doc. 66 at 13.)

The IRS filed the nominee lien on account of substantial federal income tax liabilities due and owing from Matheson for the 2001, 2003, 2004, 2007, and 2010 tax years. (*See* Doc. 5 at 10.) When Matheson failed to pay those liabilities after notice and demand, a lien arose upon all property and rights to property, including after-acquired property, of Matheson. *See* I.R.C. (26 U.S.C.) §§ 6321, 6322. The IRS contended that that lien extended to the Stillwater Property, despite Dombrowski holding its legal title, because Dombrowski held the Stillwater Property as Matheson's nominee: among other things, Matheson provided Dombrowski the funds to purchase the property, paid associated expenses, and lived in and executed control over the property. (Doc. 5 at 11.) Indeed, as the District Court found, Dombrowski and Matheson had a "nearly three decade long personal, loving relationship" and "lived together from 2006 until January 13, 2022, the date of Matheson's death," including in the Stillwater Property. (Doc. 66 at 3.) The District Court further found that "Matheson provided the $300,000 used

to purchase the Stillwater Property through direct and indirect means."
(*Id.* at 11.)

In her complaint, Dombrowski alleged that the federal tax liens
against Matheson did not attach to the Stillwater Property because,
among other things, Dombrowski purchased the property with her own
funds.  (Doc. 1 at 4.)  In its answer, the Government asserted that the
lien attached to the Stillwater Property.  (Doc. 5 at 6.)  It also brought
two counterclaims.  First, it sought an order reducing to judgment
Matheson's income-tax liabilities for the years 2001, 2003, 2004, 2007,
and 2010, in the aggregate total of $1,757,311.06 as of July 17, 2018,
plus statutory additions.  (Doc. 5 at 10.)  Second, it sought a judgment,
pursuant to I.R.C. § 7403, to enforce its federal tax liens against the
Stillwater Property and to have that property sold at a judicial sale in
partial satisfaction of Matheson's income-tax liabilities.  (Doc. 5 at 12.)

Pursuant to a stipulation by Matheson and the Government, the
court entered judgment against Matheson on the Government's claim to
reduce to judgment the tax assessments against him in the amount of
$3,237,039.91, plus statutory additions and interest accruing from July
17, 2018.  (Doc. 27.)

4

With respect to the lien-foreclosure count, the court granted in part and denied in part cross-motions for summary judgment filed by Dombrowski and the Government. (Doc. 37.) Specifically, the court held that there were triable issues of material fact with respect to certain theories advanced by the Government, including whether Dombrowski was an "insider" within the meaning of Mich. Comp. Laws § 566.35(2) which would support a finding that Matheson had fraudulently conveyed the funds used to purchase the Stillwater Property, and whether the Stillwater Property was burdened by a resulting trust in favor of the United States pursuant to Mich. Comp. Laws § 555.8 because Matheson had provided the funds to purchase the property. (Doc. 37 at 13, 17, 23.) Accordingly, it held that a trial was necessary to resolve those issues.

Dombrowski sought certification of those issues for interlocutory appeal. (Doc. 38.) The District Court denied that motion (Doc. 41). In addition, the Government moved to strike the jury demand that Dombrowski had included in her complaint. (Doc. 43.) The court granted that motion (Doc. 45), and Dombrowski filed a petition for writ of mandamus in this Court, seeking an order directing the District

Court to reinstate her jury demand. *See In re: Laura Dombrowski*, No. 21-1292 (6th Cir.). This Court denied that petition in an order dated September 24, 2021, on the grounds that both Dombrowski's quiet-title action and the Government's foreclosure action sounded in equity and accordingly were not subject to trial by jury.

The District Court then set the matter for a bench trial in April 2022. (Doc. 53.) In March 2022, Dombrowski filed a Suggestion of Death noting that Matheson had died. (Doc. 56.) The court then held a status conference on March 17, 2022 (*see* Doc. 57). At the conference, neither Dombrowski, then represented by counsel, nor the Government objected to proceeding to trial. Indeed, Dombrowski filed a pre-trial memorandum (Doc. 61), in which she asserted her ability to defeat at trial all of the Government's theories supporting foreclosure of the federal tax liens against the Stillwater Property. The court held a bench trial on April 18, 2022, at which three witnesses testified: Dombrowski; her brother, Mark Dombrowski (through whom Matheson transferred some of the funds that Dombrowski used to purchase the Stillwater Property); and her mother, Virginia Dombrowski. (*See* Docs. 64, 65.)

After trial, the District Court entered findings of fact and conclusions of law determining that the Government could enforce its federal tax liens against the Stillwater Property.  (Doc. 66.)  It held that the Government had proven by clear and convincing evidence, among other things, (1) that Matheson fraudulently transferred funds to Dombrowski so that she could purchase the Stillwater Property in her name, (2) that Dombrowski was an "insider" who received the funds from Matheson with knowledge of his insolvency, and (3) that the Stillwater Property was subject to a statutory resulting trust in favor of the United States because "the $300,000 [used to purchase the Stillwater Property] was, in fact, Matheson's" and thus "Matheson paid the consideration for property titled in [Dombrowski's] name."  (*Id.* at 27.)  Finally, the court held that the Stillwater Property was subject to a "common-law constructive trust" in favor of the United States, because "Matheson used [Dombrowski] and [her brother] as conduits to purchase the Stillwater Property and conceal it from the government. [Dombrowski] and [her brother] were complicit and even participated in Matheson's plan to do so."  (*Id.*)

Accordingly, on July 6, 2022, the court entered judgment on Dombrowski's quiet-title action and the Government's foreclosure claim, decreeing that the Government "is entitled to enforce its federal tax liens . . . against the [Stillwater Property]." (Doc. 70 at 2.) It further ordered the Stillwater Property sold with the proceeds of sale to be deposited into the court's registry pending an order of distribution, and authorized the Government to seek appointment of a receiver to carry out the sale. (*Id.*) The Government filed such a motion (Doc. 71) and the Court appointed a receiver on August 24, 2022 (Doc. 72.)

On September 2, 2022, Dombrowski filed a notice of appeal (Doc. 73) from the District Court's July 6 judgment (Doc. 70). This Court docketed that appeal as Case No. 22-1801. On October 24, 2022, Dombrowski filed a document styled "Amendment to Notice of Appeal" (Doc. 80) wherein she additionally identified as a subject of appeal the District Court's order appointing the receiver (Doc. 72). This Court docketed that appeal as Case No. 22-1988.

Dombrowski has now filed identical motions to voluntarily dismiss both appeals for lack of appellate jurisdiction, contending that the District Court's judgment ordering the Stillwater Property sold in

satisfaction of the federal tax liens and its order appointing a receiver to do so were not final as they did not resolve all claims against all parties. She asserts that failure to substitute a party for Matheson following his death as is authorized by Fed. R. Civ. P. 25(a) renders the District Court's judgment non-final and therefore non-appealable.  She further asserts that that judgment is "unenforceable."  (Mot. at 2, 26.)

While the Government does not oppose Dombrowski's voluntary dismissal of her appeals, her basis for doing so—lack of appellate jurisdiction—is erroneous, as is her suggestion that the order of sale was somehow improper and unenforceable.  The Court should therefore decline her request (Mot. at 26) to "specify that the District Court's Orders are both unappealable and unenforceable."

## DISCUSSION

Section 6321 of the Internal Revenue Code provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  I.R.C. § 6321; *see, e.g., United States v. Craft*, 535 U.S. 274, 276 (2002); *United States v. Nat'l Bank of*

9

*Commerce*, 472 U.S. 713, 719 (1985).  The federal tax lien arises upon assessment of a tax and continues until the liability is satisfied or becomes unenforceable.  I.R.C. § 6322; *see Glass City Bank v. United States*, 326 U.S. 265, 267 (1945).

Once a tax lien has attached to a taxpayer's property, the Government may seek to enforce the lien through the sale of that property.  *E.g., United States v. Rodgers*, 461 U.S. 677, 680-82 (1983).  The Government may enforce its tax liens through administrative collection methods such as the levy and distraint procedures authorized by I.R.C. §§ 6331–6340, or, as here, through a civil action to reduce assessments to judgment and to foreclose tax liens pursuant to I.R.C. §§ 7402–7403.  *Id.*; *see also United States v. Avila*, 88 F.3d 229, 233 (3d Cir. 1996).

I.R.C. § 7403 authorizes the United States to file a civil action in a district court to enforce the federal tax lien upon any property or interest in property to which it has attached.  I.R.C. § 7403(a).  The district court in a § 7403 action determines the merits of all claims to and liens upon the property, and, in any case in which the claim of the United States has been established, may decree a sale of the whole

10

property to satisfy the claim of the United States.  I.R.C.

§ 7403(c).  "[T]he use of the power granted by § 7403 is not the act of an

ordinary creditor, but the exercise of a sovereign prerogative, incident to

the power to enforce the obligations of the delinquent taxpayer himself,

and ultimately grounded in the constitutional mandate to lay and

collect taxes." *Rodgers*, 461 U.S. at 697 (internal quotation marks

omitted).  Although § 7403(b) requires "all persons having liens upon or

claiming any interest in" the property to be named as parties to the

action, "[t]he § 7403 proceeding from its very nature is a proceeding in

rem[.]" *Rodgers*, 461 U.S. at 695; *see also United States v. Verduchi*,

434 F.3d 17, 21 (1st Cir. 2006) ("a judgment pursuant to 26 U.S.C.

§ 7403 is essentially a judgment against the property").

    In general, an order of sale entered in a case pursuant to § 7403 is

a final, appealable order, even when the sale is not yet effected or a

determination made as to the proper distribution of the proceeds.  *See*,

*e.g.*, *United States v. Davis*, 815 F.3d 253, 256-57 (6th Cir. 2016) ("Here,

the final decision was the order of sale, 'because it ends the litigation

and leaves nothing but execution of the court's decision, the standard

definition of 'final' under § 1291."') (quoting *United States v. Williams*, 796 F.3d 815, 817 (7th Cir. 2015)).

Indeed, the Supreme Court has long held that a decree that directs the immediate sale of property is final and appealable. "[W]hen the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant, or directs it to be sold, . . . and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one." *Forgay v. Conrad*, 47 U.S. 201, 204 (1848); *accord Whiting v. Bank or the United States*, 38 U.S. 6, 15 (1939); *see United States v. Davenport*, 106 F.3d 1333, 1335 (7th Cir. 1997) (noting that an order of sale raises the possibility of irreparable harm because a *bona fide* purchaser of the property at a judicial sale "would be under no obligation to later return title to the [taxpayer] should the district court's order be ruled error"); *Citibank, N.A. v. Data Lease Fin. Corp.*, 645 F.2d 333, 337 (5th Cir. 1981) ("an order in a foreclosure proceeding that directs the immediate sale of specified property is in all respects a final order for purposes of appeal").

Under these authorities, the District Court's July 6 judgment was a final, appealable order because it decreed an immediate sale of the Stillwater Property.  (Doc. 70 at 3.)

Dombrowski nevertheless argues that that order of sale was not final, and thus not appealable, because it failed to adjudicate all the claims of all the parties.  Relying on Fed. R. Civ. P. 25(a), Dombrowski claims that the government was required to name a substitute for Matheson upon her filing of the Suggestion of Death, and that the absence of any substitute means that the July 6 judgment did not adjudicate all claims against all parties.  She also asserts that the order is unenforceable.  This argument is wrong for several reasons.

First, nothing in Rule 25 suggests that the Government's foreclosure action could not continue in Matheson's absence.  That rule merely provides that the court *may* order a substitution if a party dies and a claim against the party is not extinguished.  Fed. R. Civ. P. 25(a)(1).  If no motion for substitution is made within 90 days after *full and proper* service of a Suggestion of Death, then the claim against that party must be dismissed.  *Id.*  In this case, although Dombrowski filed a Suggestion of Death in the District Court, nothing in the record

13

demonstrates that she served it upon non-parties, *i.e.*, Matheson's successors, as required by Fed. R. Civ. P. 25(a)(3).  Thus, the 90-day window for substitution never began to run.  *See*, *e.g.*, *Reilly v. Donnellon*, No. 19-11249, 2021 WL 2187151, at *2 (E.D. Mich. May 28, 2021); *Tolliver v. Leach*, 126 F.R.D. 529, 530 (W.D. Mich. 1989).

Even if the 90-day period had expired without a substitution, and the claims against Matheson were required to be dismissed, that would have no effect whatsoever on the government's foreclosure claim vis-à-vis Dombrowski.  Section 7403 cases can proceed to adjudication and sale of a subject property even in the absence of parties who may claim an interest in the property.  Any such parties can be added to the case and assert their rights at the time of distribution of the proceeds of sale. *See*, *e.g.*, *United States v. Sweeny*, 418 F. Supp. 2d 492 (S.D.N.Y. 2006).

*Sweeny* is highly instructive here.  Like this case, *Sweeny* involved claims by the Government to reduce tax assessments to judgment and to foreclose its federal tax liens on certain real property.  That property was originally held by a liable husband and non-liable ex-wife as tenants in common.  *Sweeny*, 418 F. Supp. 2d at 499.  The husband later transferred his interest to his brother.  As part of its suit, the

14

Government moved to set aside the transfer of the husband's interest to his brother as fraudulent. Accordingly, the brother was named as a defendant. *Id.* at 494. Because she held a one-half interest in the subject property, the ex-wife would be entitled to one-half the proceeds of sale, while the husband's half (if the transfer to his brother were set aside) would be subject to satisfaction of the tax lien. Accordingly, the Government also named the ex-wife as a defendant in the suit. During the litigation, she died and the Government filed a suggestion of death but never moved to substitute a party in her stead. *Id.* at 495, 500. The remaining defendants then sought dismissal of the foreclosure count on the ground that the ex-wife's heirs were indispensable parties who had not been joined. *Id.* at 499-500. The court agreed that, pursuant to I.R.C. § 7403(b), her heirs were indispensable parties because they could claim an interest in the subject property. *Id.* at 500.

It nevertheless concluded that the action could proceed in their absence. It reasoned that the brother's interests were protected because he was named as a party to the suit. *Id.* at 500. And it further reasoned that the ex-wife's heirs would not be prejudiced by continuation of the suit in their absence because the Government could

sell the property but retain only the portion representing the liable husband's interest. The remainder could be held in the court registry pending identification of the ex-wife's heirs. "This remedy would be adequate in the absence of any of [the ex-wife's] successors because after being identified they would still receive their portion of proceeds from the sale of the Property." *Id.* at 500.

*Sweeny* is quite relevant in several respects to the instant case. Dombrowski is analogous to the brother in possession of the subject property in *Sweeny*. Her interests are protected by her participation in the suit. Any successors to Matheson are analogous to the ex-wife's heirs in *Sweeny*, but with one notable, and highly important difference. In *Sweeny*, the ex-wife was not liable for her ex-husband's tax liabilities, and therefore could expect a recovery from the sale of the subject property (the value of her one-half interest). Here, in contrast, Matheson could expect no recovery whatsoever. The federal tax liens attach to all of Matheson's property and rights to property to the extent of his outstanding liabilities. Those liabilities exceed $3 million. And the Stillwater Property is under contract to be sold for approximately $460,000. Thus, 100% of the proceeds from the sale will be subject to

16

the federal tax lien, and there will be nothing left for Matheson's successors to claim.

The gravamen of the Government's foreclosure suit is against Dombrowski. She holds legal title and is in possession of the Stillwater Property. And she has vigorously defended against the Government's claims. Although she argues in her motion that "Mr. Matheson's pre-trial death requires more litigation on the merits" (Mot. at 17), she does not describe just what that litigation would encompass or accomplish. Indeed, none of the theories on which the Government asserted a claim to the property required either Matheson's (or his successor's) presence or a judgment against Matheson (or his successor) individually. Matheson personally could claim no interest in the Stillwater Property even if the Government could claim a derivative interest as a result of Matheson's fraudulent actions. For example, under Mich. Comp. Laws § 566.35(2), Matheson's transfer of the funds used to purchase the Stillwater Property was "voidable *as to a creditor*[,]" *i.e.*, the United States. Matheson himself could not void the transfer. Similarly, under Mich. Comp. Laws § 555.8, all payments of consideration for conveyances to another (such as Matheson's payment of $300,000 for

conveyance of the Stillwater Property to Dombrowski) are presumed fraudulent and result in a trust in favor of "the *creditors* [the United States] of the person paying the consideration [Matheson]." Again, Matheson could not claim any trust over the Stillwater Property to his own benefit.

In any event, Dombrowski's argument presupposes that Matheson, or his successor, was a necessary party to the foreclosure action. But he was not—at least not by the time of trial. As noted above, a Section 7403 foreclosure action is not a typical claim for money damages. Rather, it is *in rem* in nature. Individual parties are named only insofar as they may claim an interest in the subject property, including a portion of any proceeds of sale. *See* I.R.C. § 7403(b).

In this case, Matheson consented to judgment with respect to his income-tax liabilities. Further, as discussed above, a lien automatically arose upon all property and rights to property of Matheson upon notice of his liabilities and failure of payment. I.R.C. §§ 6321, 6322. And the Government contended that the Stillwater Property, although legally titled to Dombrowski, was subject to that lien because Matheson fraudulently conveyed the funds to purchase the property to

Dombrowski in derogation of that lien.  As explained above, Matheson

himself could not have asserted any independent claim to the Stillwater

Property.

But even if he could have asserted some independent claim to the

Stillwater Property, he waived any such claim in his answer to the

Government's counterclaim.  He expressly denied the Government's

allegation that he had rights in the Stillwater Property (compare Doc. 5

at 11 ¶ 26 with Doc. 11 at 4 ¶ 27) and he affirmatively pled that

"Matheson does not own, and has no interest in, the Stillwater

Property" (Doc. 11 at 4 ¶ 32).  That judicial admission binds Matheson

and his successors.  *See*, *e.g.*, *United States v. Bogart*, 799 F. App'x 149,

152 (3d Cir. 2020) (Section 7403 defendant "intentionally abandoned

her right when, in [her] answer to the complaint, [she] denied that she

'may claim an interest' in the property").  Thus, even assuming that

Matheson initially was a necessary party to the Government's

foreclosure action as someone who may claim an interest in the

property (*see* I.R.C. § 7403(b)), he abandoned any right he may have had

to claim any interest in the property beyond that necessary to satisfy

the tax liens in his answer.  That abandonment had no effect on the

19

Government's theories that the Stillwater Property was burdened by its liens as a result of Matheson's fraudulent conveyance, and statutory resulting and common-law constructive trusts. Instead, it merely served to foreclose any independent claim that Matheson or his successors may make to any hypothetical excess proceeds (of which there will be none) from the sale of the Stillwater Property.

Finally, Dombrowski suggests that the failure to name a substitute for Matheson somehow renders the entire proceeding, including the trial and judgment, an "unenforceable" nullity. (Mot. at 26.) As demonstrated above, that argument is legally incorrect. *See*, *e.g.*, *Sweeny*, 418 F. Supp. 2d 492. And any such an argument cannot be allowed to frustrate the Government's years-long efforts to collect Matheson's substantial outstanding federal income-tax liabilities. As the District Court found, Dombrowski was "complicit and even participated in [Matheson's] plan" to purchase the Stillwater Property and conceal it from the government. (Doc. 66 at 27.) In this case, although she filed a Suggestion of Death, the record does not disclose that Dombrowski ever served that notice on any of Matheson's heirs or representatives. Nor did she identify who Matheson's successor(s) may

be.  Further, even *after* filing the Suggestion of Death, and while
represented by counsel, Dombrowski filed a 21-page trial brief (Doc. 61)
discussing the facts that she would prove at trial disputing the merits of
the Government's claims and asking that the nominee lien be declared
invalid.  Nowhere in that trial brief did she suggest that a party
substitution was required before the matter could continue.  And she
then proceeded to trial.  Only after the District Court ordered the
Stillwater Property sold in satisfaction of the federal tax liens did
Dombrowski assert that a successor should be substituted for Matheson
pursuant to Fed. R. Civ. P. 25(a)(1).  Courts rightly reject such efforts
by litigants to use Rule 25 as a shield against their own liability, and
this Court should do the same.  *See*, *e.g.*, *Cheramie v. Orgeron*, 434 F.2d
721, 723 (5th Cir. 1970) (surviving "defendants cannot now escape the
judgments against them by attacking the judgments against [the
deceased defendant], which they were themselves authorized to prevent
by timely action to substitute, an action they did not take"); *Rende v.
Kay*, 415 F.2d 983 (D.C. Cir. 1969); *Reilly*, 2021 WL 2187151.

CONCLUSION

To the extent that Dombrowski seeks to voluntarily dismiss her appeals, the Government does not oppose that relief.  But Dombrowski is incorrect that this Court lacks appellate jurisdiction, and there is no basis for the Court to "specify that the District Court's Orders are both unappealable and unenforceable," as she requests (Mot. at 26.).  The District Court's order of sale is a final, appealable order, and a grant of her motion to dismiss would have no effect on the finality or enforceability of the District Court's judgment, order of sale, or order appointing a receiver.

Respectfully submitted,

/s/ Paul A. Allulis

MICHAEL J. HAUNGS          (202) 514-4343
PAUL A. ALLULIS            (202) 514-5880
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1. This documents complies with the word limit of Fed. R. App. P. 27(d)(2)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f),

X this document contains 4,212 words, **or**

_ this brief uses a monospaced typeface and contains ____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

X this documents has been prepared in a proportionally spaced Typeface using Century Schoolbook in 14-point font, **or**

_ this document has been prepared in a monospaced typeface using _____ with _____.

(s) Paul A. Allulis

Attorney for United States of America

Dated: December 9, 2022

23

CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2022, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

I further certify that some participants in the cases are not registered CM/ECF users. I have mailed the foregoing motion by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participant:

Ms. Laura Dombrowski
54213 Stillwater Drive
Macomb, MI 48042

/s/ Paul A. Allulis
PAUL A. ALLULIS
*Attorney*